**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**IN RE: BRANDI KYKEISHA HICKS, Debtor** **No. 4:26-bk-12783**
**Chapter 13**

# ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY AND COMPEL THE ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION TO RELEASE VEHICLE REGISTRATION HOLD

On August 6, 2026, Brandi Hicks [Hicks or debtor], pro se, filed a *Motion to Enforce the Automatic Stay and Compel the Arkansas Department of Finance and Administration to Release Vehicle Registration Hold* [debtor's motion or motion]. In her motion, the debtor requests that the Court enter an order (1) finding that the Arkansas Department of Finance and Administration [ADFA] is in willful violation of the automatic stay under 11 U.S.C. § 362(a) for refusing to register her 2024 Hyundai Elantra [vehicle] until the debtor pays sales tax on the vehicle, as well as registration, title, and license fees, and related penalties;[1] and (2) compelling ADFA to register her vehicle and provide her with license tags.

On August 12, ADFA filed a *Response to Motion to Enforce the Automatic Stay and Compel the Arkansas Department of Finance to Release Vehicle Registration Hold* [response], arguing this Court lacks jurisdiction over ADFA due to improper service of the debtor's motion and sovereign immunity; that because ADFA did not exercise control over the vehicle, it did not violate the stay under *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021); and, in the alternative, that its actions were excepted from the stay under 11 U.S.C. § 362(b)(4) and (b)(9)(D). On August 14, the debtor filed *Debtor's Amendment and Alternative Prayer for Relief Regarding Motion for Registration Hold Release* [supplemental motion]. The supplemental motion stated, in sum, that to the extent the debtor did not prevail on her motion, she would like to be able to surrender the vehicle to

---

[1] Although the debtor appeared to assert that the only impediment to the registration of her vehicle was the payment of sales tax, ADFA asserted that in addition to sales tax, the payment of fees and penalties was also a prerequisite to registration.

the lien creditor. On August 19, the debtor filed *Debtor's Written Response to [ADFA's] Objection to Motion for Registration Hold Release* [reply].

On August 26, 2026, the Court held a hearing on the debtor's motion, ADFA's response, debtor's supplemental motion, and debtor's reply. The debtor appeared pro se. Attorney Michelle Baker appeared on behalf of ADFA. At the conclusion of the hearing, the Court took the matter under advisement. Based on a review of the Court's docket in this case, applicable law, and the pleadings, testimony, and other evidence presented at the August 26 hearing, and for the reasons stated below, the Court grants in part and denies in part the debtor's motion and orders ADFA to register the vehicle and provide the debtor with physical tags upon payment of any outstanding post-petition fees and penalties related thereto.

## I. Facts

Hicks purchased the vehicle pre-petition but did not register it. On July 13, 2026, Hicks filed her voluntary chapter 13 bankruptcy petition. On her schedule A/B, the debtor listed the vehicle, valued it at $20,000, and stated that it had been repossessed by lienholder Santander Bank [Santander]. On schedule D, she listed Santander's lien on the vehicle and stated a demand for turnover under § 542. At some point, the vehicle was returned to the debtor.[2]

Post-petition, Hicks attempted to register her vehicle at the Department of Motor Vehicle in Conway, Arkansas. Hicks testified that the clerk accepted her paperwork, then requested a cash payment from Hicks in the amount of $1368.98 for sales tax, wrote that amount on a sticky note, and gave the sticky note to Hicks. The sticky note was admitted into evidence with the caveat that it was not being admitted for the purpose of

[2] The Court's records reflect that Hicks filed an *Emergency Motion for Turnover* on July 17, 2026, to which Santander responded on July 21. The Court held a telephonic hearing on July 22, during which the parties announced that Santander had agreed to return Hicks's vehicle. Although the Court was not privy to the exact date on which the return occurred, Hicks amended her schedule A/B on August 14 to remove the notation that the vehicle was not in her possession.

establishing the amount Hicks owed, which ADFA asserted was $1533.61.[3] Hicks testified she told the clerk about her bankruptcy case. She also testified that she had assessed the vehicle and is current on the payment of her personal property taxes.[4] Hicks testified that the only thing that stopped her from being able to register her vehicle was the clerk's request that she pay sales tax because her exchange with the clerk ended before reaching a point at which the payment of fees might have been raised. ADFA does not dispute the debtor's recitation of events and takes the position that it is unable to register the vehicle until sales tax, fees, and penalties have been paid.

## II. Arguments and Analysis

The debtor argues that by requesting payment of the sales tax and declining to register the vehicle until she paid such tax, ADFA violated the automatic stay under § 362(a)(1) and (a)(6), and should be ordered to register the vehicle. ADFA responds with several defenses. First, in its response, ADFA alleged a lack of jurisdiction based on improper service. However, ADFA did not pursue this argument at the August 26 hearing and insufficient evidence was introduced to support ADFA's allegation of improper service. Therefore, ADFA's request to dismiss the debtor's motion for improper service is denied. Second, ADFA argues that the Court lacks jurisdiction to grant the debtor's requested relief because of ADFA's sovereign immunity as a state agency. Third, ADFA argues that it took no action regarding the vehicle that violated the automatic stay under *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021). Fourth, ADFA asserts that any action it did take was excepted from the automatic stay under § 362(b)(4) or (b)(9)(D). Finally, ADFA contends that state law prevents it from registering the vehicle without the payment of sales tax and fees. The Court will address each of these arguments in turn.

---

[3] The parties' dispute about the precise amount owed to ADFA is not material to determining the issue currently before the Court and may be resolved in the context of plan confirmation, if appropriate in the light of the instant ruling.

[4] Although counsel for ADFA stated in her opening statement that it had not yet "assessed tax" on the vehicle, from the statements that followed, it appears she was referring to sales tax paid at registration rather than the personal property taxes to which the debtor was referring.

### A. Sovereign Immunity Does Not Protect ADFA From Alleged Stay Violations

ADFA argued in its response and at the August 26 hearing that the Court "lacks jurisdiction over [ADFA] due to sovereign immunity" and cited to the Eleventh Amendment. As it pertains to the issue before the Court, ADFA's assertion is incorrect.

The Eleventh Amendment expressly bars suits against states by citizens of other states, and the Supreme Court has held that it also bars suits against a state by its own citizens. *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 241 (3d Cir. 1998) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). However, the sovereign immunity granted by the Eleventh Amendment is not absolute. *Id.* at 242. In addition, the Supreme Court has held that the sovereign immunity of states has been abrogated in the area of bankruptcy. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378 (2006). The states, in ratifying the Constitution, which includes the Bankruptcy Clause of Article I, Section 8, Clause 4, consented to an abrogation of sovereign immunity in the laws on bankruptcy. *Id.* The scope of the consent was limited to that "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* As the Supreme Court explained in *Katz*:

> the jurisdiction exercised in bankruptcy proceedings was chiefly *in rem*—a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction. But while the principal focus of the bankruptcy proceedings is and was always the res, some exercises of bankruptcy courts' powers—issuance of writs of habeas corpus included—unquestionably involved more than mere adjudication of rights in a res. In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.

*Katz*, 546 U.S. at 378. Because sovereign immunity has been abrogated by ratification of the Constitution, the Supreme Court concluded that Congress's enactment of 11 U.S.C. § 106 entitled "Waiver of sovereign immunity" was a valid exercise of congressional power though not the source of abrogation. *Id*. at 379. More recently, the Supreme Court further explained, and renewed, its holding in *Katz*, including that "[i]n bankruptcy . . . sovereign immunity has no place." *Allen v. Cooper*, 589 U.S. 248, 257 (2020).

The question, therefore, is whether the automatic stay imposed by § 362, and alleged violations of it, are matters necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts. Without reservation, the answer is yes. There are few, if any, statutes more fundamentally necessary for the bankruptcy process to be effectuated than the staying of collection proceedings in order to maintain and preserve property of the bankruptcy estate for treatment under Title 11. And, though not the source of abrogation, the Court notes that the relief requested by the debtor plainly falls within § 106(a)(1), which provides in relevant part that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to . . . [s]ection[] 362 . . . ." Subsection (a)(2) provides that "[t]he court may hear and determine any issue arising with respect to the application of such sections to governmental units[,]" and (a)(3) prohibits the award of punitive damages against a governmental unit, which the debtor in the instant case is not seeking. 11 U.S.C. § 106(a)(1)-(3).

Further, pursuant to § 362(a), the automatic stay is imposed on all "entities." The definition of "entities" includes "governmental units." 11 U.S.C. § 101(15). ADFA is a governmental unit because it is an agency of the state of Arkansas. *See* 11 U.S.C. § 101(27). As discussed above, sovereign immunity does not protect ADFA from application of the automatic stay. The Court will now turn to whether ADFA violated the automatic stay.

### B. ADFA's Actions Constituted More Than the "Mere Possession" of Property of the Estate Dealt With in *City of Chicago, Illinois v. Fulton*

As stated above, the debtor alleges that ADFA's actions violate both § 362(a)(1) and (a)(6). These subsections "may sometimes prohibit the same conduct." *TooBaRoo, LLC v. Burri Props., LLC* (*In re W. Robidoux, Inc.*), No. 22-mc-9005-NKL, 2022 WL 17620269, at *11 (W.D. Mo. Dec. 13, 2022). However, § 362(a)(1) prohibits formal actions to recover claims against the debtor that arose pre-petition, while § 362(a)(6) could be read to preclude both formal and informal actions. *Id.* In this case, ADFA's actions were not part of a formal action or proceeding, making § 362(a)(1) potentially inapplicable. However, it is unnecessary to decide whether ADFA's request for payment

and refusal to register the vehicle without payment fall outside the parameters of § 362(a)(1), because ADFA's actions fall squarely within § 362(a)(6).

Section 362(a)(6) prohibits *any act* to collect or recover a claim against the debtor that arose pre-petition. ADFA argues that it took no affirmative action against property of the debtor's estate, relying on *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021). In *Fulton* the Supreme Court found that merely retaining property of the estate does not violate § 362(a)(3), which subsection prohibits "any act . . . to exercise control over property" of the bankruptcy estate. *Fulton*, 592 U.S. at 158. However, the Supreme Court also stated it was not settling "the meaning of other subsections of § 362(a)." *Id.* at 161. Here, § 362(a)(3) was not raised. While the *Fulton* case is not on point as ADFA contends, it is nonetheless instructive regarding acts that constitute a violation of the stay under subsection (a)(6).

In *Fulton*, the Court determined that "[a]n 'act' is '[s]omething done or performed . . . ; a deed.'" *Id.*. at 158 (quoting Black's Law Dictionary 30 (11th ed. 2019); also quoting Webster's New International Dictionary 25 (2d ed. 1934) ("that which is done," "the exercise of power," "a deed"). The Court acknowledged that an "act" may include omissions, and also concluded that an "act" in the context of § 362(a)(3) requires more than merely retaining power over a thing in order to violate that section. *Id.* at 158-59.

Here, ADFA did not merely retain the power to issue registration. It requested payment from the debtor for sales tax. This act of requesting payment was affirmative and undisputed, and the Court finds the debtor credible in her description of these events. Further, it withheld registration of the vehicle without the payment of taxes. Even if this is an omission, *Fulton* makes clear that an "act" may include omissions. And, regardless, it is certainly a coercive position because the debtor cannot drive her vehicle lawfully on public roads without registering it. Ark. Code Ann. § 27-14-903(a); *see also Jessamey v. Saugus* (*In re Jessamey*), 330 B.R. 80, 85 (Bankr. D. Mass. 2005) (finding that the "that the continued blocking of access to motor vehicle privileges is . . . a stayed 'act' under § 362(a)(6).") Therefore, *Fulton* does not end the Court's analysis as to whether ADFA's action violated the automatic stay under § 362(a)(6) because ADFA did

act within § 362(a)(6) when it requested payment of the sales tax and when it refused to register the vehicle without payment of such tax.

### C. ADFA Violated § 362(a)(6) When It Withheld Registration of the Vehicle in Order to Collect Sales Tax and No Exception Applies

Here, the challenged actions are two-fold: ADFA requested payment of the sales tax and refused to register the vehicle and provide physical registration tags to the debtor without payment of sales tax. For the following reasons, the Court finds ADFA violated § 362(a)(6) by refusing to register the vehicle without the payment of the sales tax, a pre-petition debt, and there is no exception to the automatic stay for such act. The Court also finds that ADFA did not violate the stay by informing the debtor of the amount of sales tax due nor did it violate the stay to the extent it refused to register the vehicle because of any outstanding fees, as exceptions apply to both acts under § 362(b).

#### 1. AFDA's Claim for Sales Tax Arose Pre-Petition

ADFA's claim for sales tax arose pre-petition, specifically at the time of the sale of the vehicle.[5] A claim is defined under the bankruptcy code as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. 101(5). Title 26 of the Arkansas Code deals with sales tax on motor vehicles. Arkansas Code Annotated section 26-52-510 states in relevant part:

> (a)(1) *On or before the time for registration* as prescribed by § 27-14-903(a), a consumer shall pay to the Secretary of the Department of Finance and Administration the tax levied by this chapter and all other gross receipts taxes levied by the state with respect to the sale of a new or used motor vehicle . . . required to be licensed in this state, instead of the taxes being collected by the dealer or seller.

Ark. Code Ann. § 26-52-510 (emphasis added). From a plain reading of this statute, the obligation to pay sales tax arose prior to registration because the statute allows for the possibility of sales tax being paid prior to the time of registration. Further, if no sales tax

[5] Counsel for ADFA stated in opening and closing that sales tax relates back to the date of sale. Regardless of that position, the Court must analyze this issue so that it is determined as matter of law.

was owed until registration, there would be no reason to direct consumers to pay ADFA *instead of* the dealer or seller. If there was no right to payment created previous to registration, this language would be superfluous. The "time for registration" is found in Arkansas Code Annotated section 27-14-903, which provides, in sum, that the transferee of a new or used vehicle must apply for registration within sixty (60) days after the transfer, and that the transferee may not operate the vehicle until a registration plate is attached within that same time. Ark. Code Ann. § 27-14-903(a)(1), (2).

Registration, however, is not the act that gives rise to the claim for sales tax. Requiring payment of sales tax at registration functions as a collection mechanism for the state. This interpretation is supported by Arkansas case law. In *Pledger v. Brunner & Lay, Inc.*, 825 S.W.2d 599 (Ark. 1992), the Supreme Court of Arkansas recognized that "[t]he registration itself is not the taxable event under the sales and use tax scheme, only the point at which any properly imposed but unpaid Arkansas sales or use taxes would be collected." *Pledger v. Brunner & Lay, Inc.*, 825 S.W.2d 599, 605 (Ark. 1992) (determining whether the sales and use tax scheme violated the equal protection and commerce clauses). While the Court cannot find language in the Arkansas statutes that plainly states the sale is the event that gives rise to the right to payment of sales tax, with registration excluded and absent any other directive, it could be no other event.

Therefore, because ADFA's right to payment of sales tax on the debtor's vehicle arose at the time of purchase, it was a pre-petition claim. Acts to collect, assess, or recover on a pre-petition claim against the debtor are stayed under § 362(a)(6). Unless an exception applies, such actions violate the automatic stay.

### 2. ADFA's Act of Refusing to Register the Vehicle Until the Debtor's Payment of Pre-Petition Sales Tax Is Not Excepted from the Automatic Stay

ADFA argues that if the Court finds its actions were in contravention of the stay, they were excepted under either § 362(b)(4) or (b)(9)(D). The Court will address each in turn.

Section 362(b)(4) excepts, in relevant part, the "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power . . . ." 11 U.S.C. § 362(b)(4). Some courts

have held that "[t]he police power exception must be narrowly construed and is only meant to apply to actions that further public health and safety." *Bertuccio v. Cal. State Contractors Lic. Bd.* (*In re Bertuccio*), 414 B.R. 604, 615 (Bankr. N.D. Cal. 2008). Hicks argued this standard at the August 26 hearing. However, the Eighth Circuit has rejected this interpretation of § 362(b)(4), stating that "[t]he statutory language does not contain or suggest such a limitation of purpose." *United States v. Commonwealth Cos., Inc.* (*In re Commonwealth Cos., Inc.*), 913 F.2d 518, 521-22 (8th Cir. 1990) (citing *Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494, 503 (1986) ("*one* of the purposes of [the police or regulatory power] exception is to protect public health and safety")).

*Commonwealth* did not deal with the collection of pre-petition taxes. In *Commonwealth*, the Eighth Circuit found that the entry of a money judgment "would not conflict with the bankruptcy court's control of property of the debtor or of the estate, and would not otherwise create a pecuniary advantage for the government" and it "decline[d] to place it outside the scope of § 362(b)(4) on the ground that it seeks to 'protect' the government's 'pecuniary interest.'" *In re Commonwealth Cos., Inc.*, 913 F.2d at 525. However, importantly, in doing so the Eighth Circuit stated "[t]he entry of judgment would simply fix the amount of the government's unsecured claim against the debtors. It would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate." *Id.* at 524.

Here, at least two facts are present that were not present in *Commonwealth*: ADFA's action *would* force the payment of a pre-petition debt and *would* give ADFA a pecuniary advantage. Sales tax falls within priority payment status under two possible subsections of the bankruptcy code. "Under [§] 507(a)(8)(E), sales taxes that are excise taxes are entitled to priority unless they are 'stale'; that is, unless the taxes were due prior to three years before the bankruptcy petition date." *In re Kogut*, 325 B.R. 400, 403 (Bankr. W.D. Ark. 2005). And, "sales taxes collected from customers by a merchant upon the sale of goods or services are the kind of tax described in 11 U.S.C. § 507(a)(8)(C) . . . ." *Id.* at 403-04. As a more recent Eighth Circuit case noted "when the government's actions

'would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate,' then the government is not exercising its police or regulatory power. It is acting as a creditor." *In re Peabody Energy Corp.*, 958 F.3d 717, 723 (8th Cir. 2020) (citing *In re Commonwealth Cos.*, 913 F.2d at 523).

These factual distinctions require a different result here than that reached in *Commonwealth*. In both seeking to collect motor vehicle sales tax and withholding registration on the condition that it is collected, the state is acting as a creditor and not exercising a police or regulatory power.[6]

And, importantly, the Arkansas Supreme Court has recognized in other contexts that there is "a distinction between a tax imposed for general revenue purposes and a fee charged in the exercise of police power." *N. Little Rock v. Graham*, 647 S.W.2d 452, 453 (Ark. 1983) (citing *Parking Auth. of Trenton v. Trenton,* 191 A.2d 289 (N.J. 1963); *see also Morningstar v. Bush*, 383 S.W.3d 840, 845 (Ark. 2011) (quoting from *Harris v. Little Rock*, 40 S.W.3d 214, 221 (Ark. 2001) that "[t]his court has distinguished between a fee and a tax as 'government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers.'") The "taxing power is usually exercised to provide funding for public services at large, while police power is usually exercised to cover the cost of administering a regulatory scheme or providing a service." *Morningstar*, 383 S.W.3d at 845. Although not determinative, whether a charge is designated as a tax versus a fee is some indication of whether the charge is an exercise of the state's police power. *See Physicians' Specialty Hosp., LLC v. Ark. Dep't of Hum. Servs.*, 666 S.W.3d 107, 112 (Ark. Ct. App. 2023). Courts in Arkansas "look[] to the true character of the levy to determine which it is." *Id.*

There is nothing remarkable about the imposition of a sales tax on motor vehicles in Arkansas that causes it to fall outside of this usual rule. The charge is designated as a tax. The tax certainly generates revenue. And, unlike the statutes relating to fees, there is

---

[6] Further, it would arguably be incompatible to apply an exception to the automatic stay for the collection of pre-petition taxes that fall squarely within the code's priority payment scheme that places such taxes eighth in line for payment. *See* 11 U.S.C. § 507(a)(8).

nothing in the relevant tax statutes that designates the tax as a payment or reimbursement for any particular privilege or specific service. *See* discussion *infra*. In fact, the nature of the tax appears to be one that generates revenue to be used by the state for public services generally. *See* Ark. Code. Ann. §§ 26-52-102, -107. The sales tax is not an exercise of a police or regulatory power of ADFA, and ADFA provided no case law or statute stating otherwise or even supporting such a proposition. While ADFA argued in closing that Arkansas Code Annotated section 26-52-501(a) requires it to collect such tax before it may register the vehicle, this subsection merely sets a duty to pay. Section 26-52-510(a)(2) admittedly goes further and states that "[t]he secretary shall require the payment of the taxes at the time of registration before issuing a license for the new or used motor vehicle, trailer, or semitrailer." However, the Court finds that section 26-52-510 is simply a collection statute that is superseded by the bankruptcy code and stayed by § 362(a). *See Rivera v. Lake Berkley Resort Master Ass'n., Inc.* (*In re Rivera*), 511 B.R. 6, 15 (finding that "any [state] statute that prevents, lacerates or inhibits a debtor's basic right to the automatic stay afforded in 11 U.S.C. § 362 is preempted by the United States Bankruptcy Code[.]")

Further, unlike Title 27 that pertains to the payment of fees prior to vehicle registration, Title 26 does not include a statute prohibiting the issuance of registration without the payment of sales tax. Arkansas Code Annotated section 27-14-710 states that the "Office of Motor Vehicle shall refuse registration or issuance of a certificate of title or any transfer of registration upon any of the following grounds," which includes "the required fee" but not taxes. *See* Ark Code Ann § 19-42-201(11), which deals with special revenues, and identifies the fee in section 27-14-710 as a "registration fee.") This supports the Court's reading of the requirement that the clerk require payment of sales tax at registration in section 26-52-510 as simply a collection mechanism and not an exercise of any police or regulatory power. In sum, neither of ADFA's two actions regarding sales tax (request for payment or refusal to register until such payment) fall within the exception set forth in § 362(b)(4).

However, ADFA's act of requesting payment from the debtor of the amount owed does fall within a different exception. Subsection (b)(9)(D) provides an exception to the automatic stay for

> the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

11 U.S.C. § 362(b)(9)(D). Here, ADFA did not issue a formal assessment, but the sticky note was an informal notice and demand for payment within this section and that, by itself, was not a stay violation.

However, ADFA did not simply issue a notice of an amount due and request payment. It refused to register the debtor's vehicle and provide license tags unless the amount on a sticky note was paid. This wades further into coercing collection of a pre-petition debt similar to actions prohibited in *In re Jessamey*, cited *supra*. In *Jessamey*, a Massachusetts statute prohibited a registrar from renewing a debtor's driver's license and motor vehicle registration until certain excise taxes were paid. *In re Jessamey*, 330 B.R. at 84-85. Among the arguments raised, the town asserted that its action was excepted from the stay under § 362(b)(9). The court rejected this argument, stating:

> The Town contends that its action was protected as a demand for payment of a tax. See 11 U.S.C. § 362(b)(9)(D) (excepting from the stay "the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment"). Of course, this argument misses the point. The Debtor has not complained about, and seeks no remedy for, the Town's *demand* for payment. Rather, the Debtor complains that the stay was violated by the Town's *enforcement* of the demand by the coercive pressure of the hold.

*Id.* at 86. Similarly, here, the demand for payment of sales tax by ADFA is excepted from the stay under § 362(b)(9)(D); however, the enforcement of that demand to pay a pre-petition debt by coercive pressure is not, even if that coercive pressure is the product of a

clerk following state statutes.[7] *See In re Pomeroy*, 343 B.R. 279, 280 (Bankr. M.D. Fla. 2005) (indicating that an attempt to coerce the payment of a debt would be a violation of the stay); *In re Rivera*, 511 B.R. at 14-15 (citing cases for the proposition that the bankruptcy code preempts conflicting state laws).

Therefore, ADFA's act of requesting payment of the sales tax is excepted from the automatic stay, but its refusal to register the vehicle until such payment is not. The Court now turns to the issues presented by the outstanding fees.

### D. ADFA Did Not Violate the Automatic Stay to the Extent it Sought to Collect Registration, License, or Title Fees and Any Related Penalties, Including By Withholding Registration, and the Court Cannot Order ADFA to Register the Vehicle Without Payment of Such Fees

The debtor testified that her discussion with the clerk did not include a demand for fees. However, the debtor is asking this Court to order ADFA to register her vehicle and provide her with license tags. The Court cannot do so without requiring the debtor to first pay those fees. To the extent any registration, title, or license fees were a part of the amount requested from Hicks or registration was withheld on that basis, the Court finds that the collection of such fees are excepted from the automatic stay under § 362(b)(4) because the collection of these fees is an exercise of ADFA's regulatory power.

Title 27 deals with fees for the licensing, registering and titling of motor vehicles. Under Arkansas Code Annotated section 27-19-205, in relevant part, the term "license" means the "privilege of any person to drive a motor vehicle whether or not the person holds a valid license." Under Arkansas Code Annotated section 27-19-213, the term "registration" means "the registration certificate or certificates and registration plates issued under the laws of this state pertaining to the registration of vehicles." Arkansas Code Annotated section 27-14-601 sets out the fees to both license and register a motor vehicle. Arkansas Code Annotated section 27-14-705 imposes a title application fee that "shall be paid to the Office of Motor Vehicle at the time that application for registration thereof is made." Ark. Code Ann. § 27-14-705(c). Arkansas Code Annotated section 27-

---

[7] The Court need not determine whether the violation was willful because the debtor did not seek damages under § 362(k).

14-601 specifies the purpose of fee for registration and licensing: "(c) Nature of Fees. Each of the fees authorized in this section is declared to be a tax for the privilege of using and operating a vehicle on the public roads and highways of the State of Arkansas."

Unlike the sales tax, the statutes cited above make clear that registration and license fees are an exercise of the government's police and regulatory powers because the fees are imposed for the privilege of using a vehicle on a public road. *See also Blackwood v. Sibeck*, 23 S.W.2d 259 (Ark. 1930) (quoting with approval *Ft. Smith v. Scruggs*, 69 S.W. 679, 680 (Ark. 1902) that "[t]he license fee imposed [for using a wheeled vehicle] is, then, not a tax upon property, but is in the nature of a toll for the use of the improved streets. In other words, it is the privilege of using vehicles on the improved streets, and not the vehicle itself, that is taxed.") Arguably, because the title fee is outside of the description of the nature of the fees in Arkansas Code Annotated section 27-14-601, that purpose does not extend to it. However, the title fee is often coupled with the registration fee. *See e.g.,* Ark. Code Ann. §§ 27-14-710,-712. And, the charge for a certificate of title is referred to as a "fee" versus a "tax," which per the case law cited above is some evidence that it is an exercise of the government's police and regulatory power.

Therefore, to the extent that the amount requested included amounts for registration, title, or license fees, or penalties related thereto, ADFA did not violate the stay by requiring such payment, and therefore, the Court will not order ADFA to register the vehicle without payment of the fees and any related penalties.

### E. Without an Objection to Confirmation Before It, the Court Declines to Mandate Plan Treatment

Lastly, in an effort to harmonize federal and state law, ADFA's counsel suggested in her closing that the Court could require the debtor to pay the sales tax on her vehicle through certain treatment in the debtor's plan. However, at the hearing, the Court had no proposed plan and no objection to confirmation before it. As such, without a controversy or notice to the debtor that such issues would be tried on August 26, it would be inappropriate to determine the viability of ADFA's suggested plan treatment at this time. That being said, the debtor should provide for ADFA's claim for sales tax and any related penalties in her plan.

## IV. Conclusion and Order for Relief

Based on the findings of fact and conclusions of law stated herein, the Court finds that ADFA violated the automatic stay by refusing to register the debtor's vehicle and provide her with license tags until she paid pre-petition sales tax and any related penalties, but not fees. Upon payment of any outstanding fees, including registration, title, license, and any penalties related thereto, ADFA is ordered to register the vehicle and provide physical tags to the debtor.

IT IS SO ORDERED.

Honorable Bianca M. Rucker
United States Bankruptcy Judge
Dated: 10/07/2026

cc: Brandi Kykeisha Hicks, debtor
Michelle Lynn Baker, attorney for ADFA
Jack W. Gooding, chapter 13 trustee
United States Trustee